## MARY CLARK *vs.* N. Y., N. H. & H. R. R. Co.

### JUNE 27, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

*(1)   Negligence.   Release.   Accord and Satisfaction.*

In an action for personal injury defendant alleged as one ground of defence that plaintiff had executed a release of her claim. Plaintiff claimed want of mental capacity at the time of the execution of the release.

*Held,* that assuming her mental capacity, whether or not the paper was in the absence of payment of the sum specified, an accord and satisfaction or simply an accord with satisfaction remaining to be made by the payment of the money was a proper question for the jury under the instructions of the court.

*(2)   Negligence.   Release.*

In a personal injury action request to charge "if at the time of the execution of the release, plaintiff had sufficient mental capacity to render her capable of understanding the effect of the release, the verdict must be for defendant" was properly refused, since it excluded all consideration of the legal effect of . the paper signed.

*(3)   Negligence.   Release.   Incapacity.*

In a personal injury action request to charge "if the plaintiff was in fact suffering from mental incapacity at the time of the execution of the release, but this mental condition was not known to defendant, there can be no recovery in this action" was properly refused.

*(4)   Negligence.   Release.*

In a personal injury action request to charge "If plaintiff at the time of the execution of the release, was not in full possession of her mental faculties there can nevertheless be no recovery unless her mental incapacity was so great as to render her incapable of understanding that at the time she executed the release she surrendered any claim she might have against the defendant by reason of the accident," was properly refused, as excluding all consideration of the legal effect of the paper signed.

*(5)   Negligence.   Railroads.   Duty to Passengers.*

In a personal injury action, the refusal of a request to charge that "If the jury find that defendant, by its servants, did everything reasonably possible, having regard to the proper operation of its railroad, verdict should be for defendant and a contrary conclusion by the jury is not justified in the absence of evidence showing that defendant did in fact omit to exercise this degree of care," although not objectionable as a statement of the law, is not prejudicial where the court had fully covered the point in its charge.

*(6)   Negligence.   Release.   Mental Capacity.*

Where a defendant introduces a release from plaintiff, upon the question of plaintiff's mental capacity at the time of its execution, while mere inade-

quacy of consideration where the parties stand on an equal footing is not sufficient to establish mental incapacity, it may constitute a circumstance to be considered by the jury in connection with other facts in determining that question.

*(7)  Negligence.  Release.*

In a personal injury action request to charge "As there is no evidence of any imposition or fraud with regard to the circumstances leading up to and existing at the time of the execution of the release and no claim is made by plaintiff that any imposition or fraud existed or was practiced the jury must find the release to be valid" was properly refused, since it excluded the questions of the mental condition of plaintiff and the legal effect of the paper as signed.

*(8)  Negligence.  Release.  New Trial.*

Where in a personal injury action defendant pleaded a release from plaintiff, and upon the first trial plaintiff secured a general verdict and upon a second trial a verdict with a special finding that at the time of the execution of the release plaintiff did not have sufficient mental capacity to understand its effect, and the latter finding was approved by the trial court, when it granted a new trial upon all issues except that involving the validity of the release which was to be regarded as finally determined; upon exceptions, the finding of the *nisi prius* court will not be disturbed.

TRESPASS ON THE CASE for negligence.    Heard on exceptions of defendant and overruled.

JOHNSON, C. J.    This is an action of trespass on the case brought by Mary Clark of Bristol, Rhode Island, against the New York, New Haven & Hartford Railroad Company to recover damages for injuries alleged to have been sustained by her while riding as a passenger on a train of the defendant between Swansea, Massachusetts, and Warren, Rhode Island, January 3, 1907.

The case has been tried twice.    At the first trial, which occurred in May, 1908, the plaintiff recovered a verdict of $5,000.    A new trial was granted on motion of the defendant on the ground that the plaintiff had released her claim.    The case was tried again, June 20th to 27th, 1910, and resulted in a verdict for the plaintiff in the sum of $2,000.    The plaintiff thereupon moved for a new trial, asking the court to restrict the issues on the new trial to the question of damages.    That motion was denied by the trial court on the

ground that it had no power to grant such a motion.  The plaintiff excepted to this ruling and the Supreme Court held that the trial court had such power and sent it back for hearing on the motion.  *Clark* v. *N. Y., N. H. & H. R. R. Co.,* 33 R. I. 83.  Thereupon plaintiff's said motion for a new trial on the question of damages was heard, and a new trial was granted on all the issues except the issue concerning the release.  To this decision the defendant excepted and the case is now before the court for hearing upon defendant's bill of exceptions, including this exception and others taken during the course of the trial.

The facts surrounding the accident upon which the suit is based are, briefly, these:  On January 3, 1907, the plaintiff, with her son, boarded the 9:15 p. m. train at Fall River, bound for Warren.  The stretch of railroad upon which she was traveling was operated by the overhead trolley electrical system.  The method of construction consists in poles located on the side of the right of way with projecting arms to which are attached wires for the purpose of supporting the trolley-wire conveying the current.  The train upon which the plaintiff was traveling consisted of two cars.  In the head car was located the motor.  The plaintiff was seated in the second car.  On top of the head car was a trolley-pole, in many features resembling the trolley-pole that is found upon the ordinary street car.  This pole, at its base, fitted into a socket, and was held in place by a clamp with bolts.  These bolts could be loosened or tightened for the purpose of holding or removing the trolley-pole itself, the holding force being the friction the clamps exerted on the sides of the pole at its base.  This mechanism was known as the trolley-pole base.  In it was located a spring.  On the other end of the trolley-pole was a wheel which traveled on the trolley-wire.  The wheel was held against the wire by the pressure of the spring.  High rates of speed were at times attained on this stretch of railroad and it resulted from this, that at times the trolley-pole would leave the trolley-wire.  To guard against this, a man was employed upon the train

known as a trolley-tender.   At the peak of the trolley-pole a rope was attached.   When the train was in motion this rope hung down between the platform of the two cars and it was the duty of the trolley-tender to stand on the platform of one of the cars, holding the trolley-rope in his hands; this, so that in case the trolley-wheel left the wire he could pull down on the rope and so prevent the trolley-pole from striking against the span-wires or cross-arms, and also to enable him to replace it upon the trolley-wire.   On the night of the accident, somewhere between Swansea and Warren, the trolley-wheel left the wire.   As the trolley-tender pulled down on it, it probably struck or was caught by the mechanism attached to the cross-arm; the pole pulled out of its socket, dropped on the roof of the car, and in falling to the ground broke the window glass near where the plaintiff was sitting.

The only negligence insisted upon at the trial was the negligence of the trolley-tender on the electric train in allowing the trolley-pole to get away from his control.   This caused the pole, it is alleged, to strike against span-wires and to rebound against the roof of the car until it came out of its socket, fell on the roof of the second car and off to the ground.   In some way the glass of the window of the car beside the seat in which Mrs. Clark was riding was broken, probably by the trolley-pole.   The glass scattered upon her and her alleged injuries resulted.   It was admitted at the trial, by plaintiff's counsel, that there was no defect in the apparatus; that it was proper apparatus, and that it was reasonably inspected.

The defendant's first 28 exceptions are waived.

Exception 29 is to the refusal of the justice at said trial to direct a verdict for the defendant.   From our examination of the evidence, we find no error in this refusal.

Exceptions 30, 31, 32 and 33, all involve the same point and are argued together by defendant's counsel.   We will consider them together.

(1)    Exception 30:   To that part of the charge of said justice, at said trial, in the matter of accord and satisfaction, with

regard to how that matter may be understood at the time, as follows: "If, on the other hand, it was understood and agreed between them that as a part performance of this undertaking of theirs to pay her the hundred dollars, that the hundred dollars should actually be paid before the release was effective, then the release would not be binding upon her until the money was received and accepted by her; even a tender by the defendant would not in that case be sufficient to wipe out and extinguish the original claim. An accord and satisfaction means exactly what it says. It means an agreement as to the amount and a payment of that amount by the defendant company and an acceptance or receipt of that amount by the plaintiff and that any time up to the time it is actually received by the plaintiff there is no satisfaction. It is the performance by the defendant of that which it undertakes to do that renders the agreement an accord and satisfaction and binding upon the defendant."

Exception 31: To that part of the charge of said justice, at said trial, in the matter of accord and satisfaction, with regard to how that matter may be understood at the time, as follows: "If, however, that is not the case and it was further understood as a further act on the part of the defendant, to carry out this obligation which is incorporated in this release, to pay her the hundred dollars as a further performance of the original obligation, then it is not binding upon her and she is entitled to ignore that release and bring her action. I hope, gentlemen, I have made myself understood by you as to the difference when the release would be binding and when it would not. If I have not, if any one of you thinks you do not fully understand it, if you would suggest that fact I would make an effort to explain it to you still further."

Exception 32: To that part of the charge of said justice, at said trial, in the matter of accord and satisfaction, with regard to how that matter may be understood at the time, as follows: "If she signed a paper, lacking sufficient mental capacity to understand it and her lack of mental capacity had

been created by the negligence of the defendant company, then the paper would not be binding upon her unless the amount agreed to be paid in satisfaction was actually paid, unless it was understood between her and the company that the promise to pay was accepted as a release of their obligation to her by reason of the injury. An accord and satisfaction is treated by the courts as an extinguishment of the original claim, but there must be not only an agreement between the parties as to what shall be done and how much shall be paid, but there must be actual performance of that, unless the agreement is itself accepted as an extinguishment of the claim, in which case the parties would substitute a new cause of action for the original and the claimant would have to proceed upon the defendant's promise, to recover such sum or to secure performance of such duty as they had agreed to perform. That is the rule in regard to accord and satisfaction.''

Exception 33: To that part of the charge of said justice, at said trial, in the matter of accord and satisfaction, with regard to how that matter may be understood at the time, as follows: ''That is granted, gentlemen, unless you shall find as I have already stated in regard to the accord and satisfaction. If you shall find that the signing of the release and the promise contained in it by the defendant was not to be received in satisfaction of her obligation, it would not be binding upon her, because the consideration was not received by her.''

Defendant's counsel argue as follows: ''The jury were instructed that in order to find the release valid they were not alone to find that the plaintiff had sufficient mental capacity to understand its effect, but they must also find the promise of the defendant to pay was accepted by her in extinguishment of her cause of action. The defendant does not complain of this as a statement of the law, but it does urge that there was no reason at all why the jury should have been charged upon the subject of accord and satisfaction; that the fact that they were so charged obscured the issue

with respect to the validity of the release and may well have caused the jury to arrive at a finding with regard to it that was not based upon the evidence. The plaintiff defended against the release on the ground that she did not have mental capacity to understand it at the time of its execution. No claim was ever made by her, nor did she ever admit, that she understood the meaning and effect of the release, but that she further understood that the release was not to be binding upon her until the money had in fact been paid. The objection to the charge is that it is not based, in any sense, upon testimony, and that it had a necessary tendency to confuse the issue upon the release and was, therefore, prejudicial to the defendant. It really left two issues upon the release for the determination of the jury, first, the plaintiff's mental capacity, and secondly, assuming that she did understand its nature and effect at the time she executed it, whether she did or did not in signing it accept the defendant's promise to pay in extinguishment of her cause of action. This second issue was wholly outside the case since the plaintiff's claim was that she lacked mental capacity. She at no time claimed that the release was not an accord and satisfaction, assuming the existence of her mental capacity."

We do not find this argument convincing. Counsel admit the correctness of the instructions as a statement of the law, and we cannot agree with their claim that the question, "assuming that she did understand its nature and effect at the time she executed it, whether she did or did not in signing it accept the defendant's promise to pay in extinguishment of her cause of action" was wholly outside the case. The question, whether the paper signed, assuming her mental capacity, was in the absence of payment of the sum specified an accord and satisfaction or simply an accord with satisfaction remaining to be made by the payment of the money, would certainly be a proper subject for consideration by the jury under the instructions of the court, which instructions were, we think, as favorable to the defendant as the law would permit.

Exception 34:  To the refusal of said justice at said trial to charge defendant's first request:  "If at the time of the execution of the release, the plaintiff had sufficient mental capacity to render her capable of understanding the effect of the release, the verdict must be for the defendant." This instruction was properly refused. It would have excluded all consideration of the legal effect of the paper signed.

Exception 35:  To the refusal of said justice at said trial to charge the defendant's second request:  "If the plaintiff was in fact suffering from mental incapacity at the time of the execution of the release, but this mental condition was not known to the defendant, there can be no recovery in this action."  This exception is not argued, although not formally withdrawn.  To have given it would have been obviously erroneous.

Exception 36:  To the refusal of said justice at said trial to charge defendant's third request:  "If the plaintiff at the time of the execution of the release, was not in full possession of her mental faculties, there can nevertheless be no recovery in this action unless her mental incapacity was so great as to render her incapable of understanding that at the time she executed the release she surrendered any claim she might have against the defendant by reason of the accident." This request was properly refused for the same reason as the first request to which exception 34 was taken.

Exception 37:  To the refusal of said justice, at said trial, to charge defendant's seventh request:  "If the jury find that the defendant by its servants did everything reasonably possible, having regard to the proper operation of its railroad, the verdict should be for the defendant, and a contrary conclusion by the jury is not justified in the absence of evidence showing that the defendant did in fact omit to exercise this degree of care."  We do not think that this request is objectionable as a statement of law.  The judge, however, in charging upon this question said:  "Well, gentlemen, as I have already said, in order to establish her

right, she having asserted that the defendant was guilty of negligence in the matter, the burden is upon her to satisfy your minds that this accident did result to her by reason of the defendant's negligence.   Now, the plaintiff was a passenger upon a car of the company.   The company was a common carrier of passengers for hire.   The law imposes an obligation to a passenger from the carrier.   The extent of the obligation of the carrier to its passenger is, it is bound to exercise for the safety of the passengers the highest degree of care and foresight consistent with the orderly conduct of its business in respect to all matters and things under its control.   If a common carrier of passengers does exercise that degree of care and a passenger is injured, the company is not liable.   A carrier of passengers does not insure the safety of its passengers.   It is only liable in case of negligence." We think the court had fully covered this point and that therefore there was no error in refusing the request.

Exception 38:   To the refusal of said justice, at said trial, to charge defendant's tenth request:   "Notwithstanding the fact that the jury may feel that the consideration expressed in the release was not sufficiently large to compensate the plaintiff for any claim that she may make with regard to the physical effects of the accident, the jury cannot take such fact into consideration in coming to their verdict."   The release was introduced in evidence by the defendant and the consideration expressed therein could not well be excluded from consideration by the jury.   The question of the capacity of the plaintiff at the time of its execution was clearly for the consideration of the jury under the evidence in the case, and while mere inadequacy of consideration, where the parties stand on an equal footing, is not sufficient to establish mental incapacity, we think it may constitute a circumstance to be considered, in connection with other facts shown, in determining the question of the plaintiff's mental capacity at the time the release was executed.   There was, therefore, no error in the refusal of this request.

Exception 39: To the refusal of said justice, at said trial, to charge defendant's eleventh request: "That there is no evidence in this case from which the jury may infer that Mrs. Clark thought that Mr. O'Donnell was acting as her attorney." The evidence as to what took place at the time the release was signed was before the jury and was for them to consider. Dr. Siegel testified: "I suggested to her for me to go and see Lawyer O'Donnell and see what I could do for her." He also testified that he went and saw Mr. O'Donnell about twenty minutes or half an hour after he saw the plaintiff and had a conversation with him. He testified: "I told him about Mrs. Clark, that she was a poor woman and up against it, using a slang phrase, and said, 'Billy, I think you can do something for her.' He testified that Mr. O'Donnell went with him to see the plaintiff. He further testified: "134 Q. Now, tell us what conversation occurred, Dr. Siegel, in Mrs. Clark's presence after you and Mr. O'Donnell had arrived at her house. A. Well, as I recall it, I said 'Mrs. Clark, here is Lawyer O'Donnell and he is going to get this thing through just as soon as he possibly can and there won't be any red tape and you will get one hundred dollars,' and that is practically the very thing, except as I told you before, that she had to sign this paper, and the paper was read by Lawyer O'Donnell and myself to her. That was practically all that happened. 135 Q. Now Mr. O'Donnell did not know anything about the accident to Mrs. Clark until you told him? A. Until I went to see him at his office." This and the other testimony was before the jury. There was no error in the refusal of this request.

Exception 40: To the refusal of said justice, at said trial, to charge defendant's twelfth request: "As there is no evidence of any imposition or fraud with regard to the circumstances leading up to and existing at the time of the (7) execution of the release and no claim is made by the plaintiff that any imposition or fraud existed or was practiced, the jury must find the release to be valid and the verdict, there-

fore, should be for the defendant on this phase of the case."
This request was properly denied. It excludes entirely the
questions of the mental condition of the plaintiff and the
legal effect of the paper as signed.

Exception 41: To the ruling of said justice on plain-
tiff's motion for new trial, granting a new trial "in which
trial all issues raised by the pleadings are open to determina-
tion, except that issue involving the validity of the release
which shall be regarded as finally determined, in favor of the
(8) plaintiff, by the verdict rendered at the last trial." Of the
serious condition of the plaintiff immediately after the
accident and continuously thereafter to the time of the trial
there can be no doubt. In fact, the defendant did not
seriously deny such to be the case, but insisted as a defence
that it was guilty of no negligence in the matter and if it
were that it had obtained a release from the plaintiff from
liability and further that the plaintiff's serious condition was
the result of Bright's disease from which she was suffering
before and at the time of the accident and in no manner
attributable to the accident. In his decision, the judge said:
"In regard to the release the plaintiff contended at both
trials that she ought not to be bound by it because at the time
of signing she was suffering from the shock experienced in the
accident to such an extent that she did not understand the
nature of her act or the effect of the release, but thought she
was signing a notice to the company that she had been in
an accident. Her contention in this regard has been sus-
tained by two juries. The jury could not have returned a
verdict in favor of the plaintiff at the first trial without
sustaining her contention in regard to the release. At the
second trial, in addition to the general verdict, the jury
found specially that, 'The plaintiff at the time of the execu-
tion of the release did not have sufficient mental capacity to
understand the effect of it.' Without reviewing the testi-
mony at length in this regard it may be stated generally
that on the day after the accident, when the release was
signed, the plaintiff was still in a highly nervous condition

from the shock, and the jury was warranted in finding from that fact, and other evidence bearing upon the question, that she was at that time in a dazed or stupid condition and that she did not understand the effect of her act. By reason of the two verdicts sustaining the plaintiff's contention in this respect, and more especially the special finding at the second trial, it would be imposing an unnecessary burden upon the plaintiff to subject her to the expense of proving before a third jury the invalidity of the release. So far as the validity and effect of the release is made an issue, that issue ought to be treated as finally determined in the plaintiff's favor."

Upon the question of the defendant's negligence the court said: "I do not regard the evidence upon the defendant's negligence so convincing as to lead to the conclusion that that issue upon another trial involving the question of damages ought to be treated as finally determined by the two verdicts, general in that respect, heretofore rendered. If, therefore, a new trial is granted it ought to be upon all issues raised by the pleadings except that issue involving the validity of the release."

Upon the question of damages he said: "In regard to the damages, without doubt the plaintiff suffered much pain, sustained considerable pecuniary loss, was deprived of many pleasures, and subjected to considerable expense by reason of the accident.

"The defendant contended that the plaintiff's condition, and consequently much of her loss, for which she is suing, is due largely to a chronic case of Bright's disease, which existed before and at the time of the accident, whether known to her at that time or not, and now insists that the award of the jury is amply sufficient to compensate her for all loss sustained as a result of the accident, both in a physical and pecuniary sense.

"The plaintiff had an expectancy, at the time of the accident, of upwards of 18 years. She was in receipt of from $9 to $10 a week, was in good health and had steady

employment.   She has never been able to do any work since the accident, and it is highly probable never will be able to do any more, has suffered much pain, and been put to considerable expense for medical attendance and nursing.   She had always been well and able to work up to the time of the accident and had no knowledge of the existence of Bright's disease.   Before the accident she weighed 145 to 150; after the accident fell away to 82, and at the time of the trial in June, 1910, had increased in weight to 91.   If all her physical ailments and pecuniary loss, of which there was ample evidence at the trial, are traceable to the accident, the verdict of the jury at the first trial, of $5,000, comes nearer doing justice than that at second trial of $2,000.''

After reviewing the testimony of the medical witnesses and chemists, he said: ''In view of the fact that these eminent chemists in these several examinations,—three made by one of them and one by the other, covering so wide range of time, and neither of them finding casts in the plaintiff's urine, and all of them agreeing together with Dr. Smith that casts are always present in Bright's disease, and of the further fact that Dr. Donley is not able to make out that the plaintiff has Bright's disease, I do not think the jury was warranted in finding that the plaintiff at the time of the accident had Bright's disease, from the fact that Dr. Smith in March, 1908, found evidence of what he considered not to be a bad case of Bright's disease, and nothing to indicate the length of time such evidence had existed, nor do I think that the jury was warranted in finding that the plaintiff was suffering from Bright's disease at the time of the trial in June, 1910.

''The jury at the former trial, in May, 1908, must have failed to find that the plaintiff was suffering from Bright's disease or they could not in good faith have awarded her $5,000.   At the second trial they must have found that some of the grievances sued for were the result of Bright's disease, or they must, in good faith, have awarded her more than $2,000.

"The rule laid down by the Supreme Court for the conduct of the trial court in matters of this kind is, ' Whenever it appears that the jury have from any cause, failed to respond truly to the real merits of the controversy, they have failed to do their duty, and the verdict ought to be set aside and a new trial granted.' *Wilcox* v. *R. I. Co.*, 29 R. I. 292.

"Acting in conformity to the above rule I deem it the duty of this court to open this case that the parties may submit the same to another jury, as I regard the finding of the jury, if such was the fact, that any considerable portion of the plaintiff's grievances alleged in the declaration are due to Bright's disease, as against the great weight of evidence; and if the jury did not so find, I regard the award of $2,000 made by the jury as clearly inadequate to compensate the plaintiff."

From our examination of the evidence we find no error in these conclusions of the presiding judge.

All the defendant's exception are overruled and the case is remitted to the Superior Court for a new trial upon all the issues raised by the pleadings except that issue involving the validity of the release which shall be regarded as finally determined in favor of the plaintiff by the verdict rendered at the last trial.

*A. B. Crafts*, for plaintiff.

*Joseph C. Sweeney, Eugene J. Phillips*, for defendant.